# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BLAKE R. GRIFFIN,               )
                                     )
      Plaintiff,            )
                                     )
    vs.                  )       Case No. 2:16-cv-1403-TMP
                                     )
NANCY A. BERRYHILL,[1]     )
Acting Commissioner of the   )
Social Security Administration,  )
                                     )
      Defendant.       

## MEMORANDUM OPINION

The plaintiff, Blake R. Griffin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Griffin timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Accordingly, the court issues the following memorandum opinion.

---

[1] Counsel for the Commissioner pointed out in her brief that Carolyn W. Colvin is no longer the Commissioner and that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. The Clerk is DIRECTED to update the style of the case accordingly.

## I. Introduction

Mr. Griffin was 47 years old on the date of the ALJ's opinion. (Tr. at 31, 158). He obtained his GED after attending high school through the 10th grade. (Tr. 58). After obtaining his GED, he completed one semester of training at a technical college to become a machinist and one semester of training in production at another technical college. *Id.* His past work experience includes employment in labor jobs, such as tire store sales/service, vending route sales, truck driver, back hoe operator, and building maintenance. (Tr. at 59-66). Mr. Griffin claims that he became disabled on May 8, 2013, due to depression and anxiety, attention deficit disorder ("ADD"), total left knee replacement, arthritis, and "right knee no cartilage [sic]." (Tr. at 90).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a

claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other

work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Griffin meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2018.  (Tr. at 20).  He further determined that Mr. Griffin has not engaged in substantial gainful activity since the alleged onset of his disability.  *Id.*  According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: degenerative joint disease of the knees, arthritis of the back, obesity, depression, and anxiety.  *Id.*  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ did not find Mr. Griffin's allegations to be entirely credible (tr. at 23), and he determined that he has the following residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with occasional pushing and pulling with the lower extremities; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing,

kneeling, crouching, and stooping, but no crawling; no more than occasional exposure to extreme heat and cold and vibration; he should avoid all hazardous machinery and unprotected heights; and no working requiring walking on uneven terrain. During a regularly scheduled workday, or the equivalent thereof, he can; (1) understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions, (2) do simple, routine repetitive tasks, but is unable to do so with detailed or complex tasks, (3) deal with changes in work place, if introduced occasionally and gradually and are well-explained, and (4) he may be expected to miss one day of work per month due to his impairments.

(Tr. at 22).

According to the ALJ, Mr. Griffin is unable to perform any of his past relevant work, he is a "younger individual," and he has "at least a high school education," as those terms are defined by the regulations. (Tr. at 29). He determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not he has transferable job skills." (Tr. at 30). The ALJ found that Mr. Griffin has the residual functional capacity to perform sedentary "jobs that exist in significant numbers in the national economy." (Tr. at 30). Even though additional limitations impede Plaintiff's "residual functional capacity to perform the full range of sedentary work," the ALJ determined that Plaintiff "would be able to perform the requirements of representative sedentary, unskilled occupations with an SVP of 2, such as . . .

telephone quotation clerk, . . . charge account clerk, . . . .and as a dowel inspector." *Id.* The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 8, 2013, through the date of this decision." *Id.*

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this

court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no

power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Mr. Griffin alleges that the ALJ and the Appeals Council erred in finding that he was not disabled because substantial evidence of his disability was presented.[2] Specifically, Mr. Griffin argues that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ failed to give substantial or considerable weight to the Residual Functional Capacity Assessment ("Assessment") prepared by Dr. Elizabeth Stevenson[3] when the ALJ found that the plaintiff was capable of performing sedentary work. (Doc. 13 at pp. 7-9). Second, the plaintiff contends that, when considered in light of the new evidence submitted to the Appeals Council, the ALJ erred in finding that the

---

[2] Although the plaintiff suggests otherwise, the Appeals Counsel did not fail to consider the newly submitted evidence when it denied the plaintiff's Request for Review. *See* Tr. 1-3; *see also* Doc. 13 at pp. 9-12. In its denial of the plaintiff's request for review, the Appeals Council stated that "we considered . . . the additional evidence listed on the enclosed Order of Appeals Council . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 2). In the recent Eleventh Circuit opinion, *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780 (11th Cir. 2014), as in the instant case, the Appeals Council "denied [the claimant's] request for review, explaining that it had considered [his] reasons for disagreeing with the ALJ's decision as well as his additional evidence," and determined that the new evidence did not provide a basis for changing the ALJ's decision. *Id*. at 782. Also similarly to the instant case, the Appeals Council in *Mitchell* did not engage in a discussion of the new evidence. *Id*. The Eleventh Circuit held that "the Appeals Council is not required to explain its rationale for denying a request for review. . . ." *Id*. at 784. This court has no reason to second-guess the assertion by the Appeals Council that it considered the new evidence offered by the plaintiff. Accordingly, to the extent the plaintiff implicitly suggests in his brief that his case should be remanded for this reason, the argument is without merit.

[3] Dr. Stevenson is Mr. Griffin's primary treating physician. (Tr. at 69).

plaintiff's degenerative joint disease of the knee did not meet or medically equal the severity of the impairment in Listing 1.02A. (Doc. 13 at pp. 9-12).

A.    *Dr. Stevenson's Residual Functional Capacity Assessment*

The plaintiff contends that the ALJ erroneously gave little weight to Dr. Stevenson's Residual Functional Capacity Assessment ("Assessment").  (Doc. 9 at p. 3.)  A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*,

937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

As explained above, however, the court must remain aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Stevenson met with Mr. Griffin on January 9, 2015, to diagnose Mr. Griffin's current state and to prepare the Assessment in anticipation of the ALJ's hearing. During that office visit, Dr. Stevenson noted "[w]ith regard to the knee pain, left knee pain a constant 6 and incre[ased] to a '10' with prolonged standing. Always swollen and worsens with certain activities. Left knee gives way at times and right knee history of 'popping' out of joint. . . ." (Tr. at 544). In her review of

symptoms, she found that the plaintiff was positive for "arthralgias" of the knees and swelling of the knees, with "cold damp weather worsen[ing the] pain." *Id.* The plaintiff stated that he was "unable to kneel due to pain and unable to stand if" he did kneel. Additionally, the "left knee gives out causing falls . . . [and s]plinting knee causes muscular wasting." *Id.* The objective exam revealed a "slow and . . . abnormal" gait and a swollen left knee with "an effusion." (Tr. at 546). However, Dr. Stevenson did propose any treatment or plan for his knee issues.

On January 20, 2015, Dr. Stevenson prepared her Assessment in response to the January 9, 2015, office visit. In the Assessment, she concluded that Mr. Griffin had the following exertional limitations, in pertinent part: "stand and/or walk (with normal breaks) for a total of . . . less than 2 hours in an 8-hour workday" and "sit (with normal breaks) for a total of . . . less than about 6 hours in an 8-hour workday." (Tr. at 538). She explained that the plaintiff had undergone a left total knee replacement with revision of the left knee and that he "continue[d] to have pain, swelling, [and] loss of function." *Id.* She also concluded that Mr. Griffin would never be able to climb "ramp/stairs" or "ladder/rope/scaffolds" or engage in activities involving balancing, stooping, kneeling, crouching, or crawling. (Tr. at 539). She explained that the plaintiff had pain and weakness and his "knee function affect[ed] these activities." *Id.* Finally, she concluded that the plaintiff

should avoid even moderate exposure to extreme cold, humidity, and "hazards (machinery, heights, etc.)." (Tr. at 541).

The ALJ gave little weight to "[t]he opinion of Dr. Stevenson . . . ." (Tr. at 28). Specifically, the ALJ concluded that

> [w]hile Dr. Stevenson opines that the claimant can perform work at the light level of exertion, her other limitations (such as the claimant can sit less than six hours a day and that he should never balance, kneel, crawl, etc.) are inconsistent with the objective medical evidence that shows that the claimant does not require an assistive device, that he can duck walk, and that his reflexes, gait and coordination are intact. Some of Dr. Stevenson's limitations are also vague and conclusory and she failed to give an opinion in several areas as to what specific limitations, if any, she believes the claimant has.

(Tr. at 28-29). Mr. Griffin contends that the ALJ only briefly explained why Dr. Stevenson's findings were to be given little weight. Specifically, the plaintiff alleges that the factors identified by the ALJ ("the claimant does not require an assistive device, that he can duck walk, and that his reflexes, gait and coordination are intact" (Tr. at 28)) "bear little relevance to the issue of whether the plaintiff can sit or stand for a certain length of time during a work day." (Doc. 13 at p. 8). Mr. Griffin also asserts that he has submitted new evidence demonstrating that he cannot duck walk and that evidence in the record demonstrates that his "gait is not normal but that he walks with a limp." (Doc. 13 at p. 8).

Despite Mr. Griffin's assertions, the ALJ did not err in affording little weight to the Assessment prepared by Dr. Stevenson. In fact, the ALJ correctly noted that the Assessment is inconsistent with the medical record as a whole, as discussed throughout his decision. (Tr. at 28). Evidence exists in the record which contradicts Dr. Stevenson's findings in the Assessment, both prior to and after the Assessment, and demonstrates that the plaintiff "does not require an assistive device . . . and that his reflexes, gait and coordination are intact." *Id.* For example, Dr. Stevenson's other medical records are inconsistent with Assessment, which include records from another doctor in her office who also evaluated Mr. Griffin. On January 2, 2014, Dr. Jordan Vaughn saw the plaintiff for an upper respiratory infection; while the plaintiff did not present with knee issues at this visit, Dr. Vaughn noted that the plaintiff's gait was normal. (Tr. at 524-25). On March 3, 2014, Dr. Stevenson noted that Mr. Griffin presented with a cough and diffuse joint pain, which included pain and swelling in the knee; Dr. Stevenson also noted that Mr. Griffin had consulted with Dr. Goldstein regarding another possible knee surgery. (Tr. at 518). On July 15, 2014, Dr. Stevenson stated that the plaintiff "present[ed] with . . . pain [in his] knees. Has had knee surgery. Takes Mobic daily. Has applied for disability and has hearing in about 6 months." (Tr. at 500). However, Dr. Stevenson did not make any notations regarding the objective

examination of his musculoskeletal system nor did she establish a plan for treatment of any knee problems. (Tr. at 502-03).

Later on July 15, 2014, Mr. Griffin visited Dr. Vaughn for a Department of Transportation ("D.O.T.") physical (tr. at 496) in order to keep his commercial driver's license ("CDL") current (tr. at 57-58). Dr. Vaughn concluded that Mr. Griffin was negative for arthralgias and myalgias; additionally, Dr. Vaugh found that Mr. Griffin had a normal range of motion ("ROM") and normal duck walk.[4] (Tr. at 496-97). The plaintiff visited Dr. Stevenson again on September 10, 2014, for abnormal pain, but importantly, he did not complain of knee pain nor did Dr. Stevenson address any knee issues in her office note. (Tr. at 490-92). On October 24, 2014, Dr. Stevenson saw Mr. Griffin for a cough; again, Dr. Stevenson did not address any knee issues or conduct an objective examination of the knee during that visit. (Tr. at 483-85).

Additionally, medical records from Dr. Goldstein, the plaintiff's orthopedic surgeon, render the Assessment inconsistent with the entire record as a whole. Mr. Griffin underwent a total knee arthroplasty on August 20, 2013. (Tr. at 340). Laura Leach, a physical therapist, noted on October 10, 2013, that Mr. Griffin was making excellent progress following the surgery, with his gait, strength, and ROM

---

[4] The notation of a "normal duck walk" was likely in error, as suggested by the plaintiff in evidence submitted to the Appeals Council. Regardless, this single mistake does not overcome the record and overwhelming medical evidence that supported the ALJ's decision to give little weight to Dr. Stevenson's Assessment.

improving. (Tr. at 439). On October 21, 2013, Mr. Griffin followed up with Dr. Goldstein (Tr. at 462), who noted that the plaintiff "ha[d] no real complaints other than he feels a little clicking occasionally in his knee." *Id.* The physical examination revealed that "[the plaintiff] walk[ed] with a minimal limp. Range of motion [ROM], 0 to 125 degrees. [The plaintiff] does have some very minimal mid-flexion instability. He has no instability noted with the knee in full extension." *Id.* On December 2, 2013, Dr. Goldstein noted that Mr. Griffin was "doing well" despite "some instability" causing pain that was "not severe." (Tr. at 461).

Despite complaints of knee pain "while standing, sitting, and resting his knee for any significant periods of time" and knee swelling in March 2014, Dr. Goldstein noted that Mr. Griffin exhibited only a "mild limp" and a ROM of 0 to 135 degrees on March 3, 2014 (Tr. at 459), and a normal gait and ROM of 0 to 120 degrees on March 31, 2014, with no indications of instability (Tr. at 457). On May 2, 2014, following an April 24, 2014, arthroscopic procedure on his left knee performed by Dr. Goldstein, Mr. Griffin stated to Dr. Goldstein "that his knee [was] already feeling much better." (Tr. at 455). Mr. Griffin required no assistance and had no limp; there was no effusion of the left knee and his ROM was 0 to 120 degrees. *Id.* Finally, on April 20, 2015, *after* the date Dr. Stevenson prepared her Assessment, Dr. Goldstein evaluated Mr. Griffin again following

complaints of worsening knee pain with instability. Specifically, Mr. Griffin reported that "he [felt] unstable when walking, especially if he . . . climb[ed] anything like a step ladder." (Tr. at 613). However, Dr. Goldstein noted that Mr. Griffin "ha[d] not . . . tried a brace" nor engaged in "significant strengthening exercises." *Id.* The physical examination revealed a "normal gait without assistive devices" and, in regards to the left knee, "[n]o deformity . . . [,m]ild tenderness . . . [,n]ormal patella mobility[,]" and a ROM of 0 to "greater than 125 degrees." (Tr. at 614).

For these reasons, the court is of the opinion that the ALJ had good cause to disregard Dr. Stevenson's Assessment of the plaintiff's RFC because it was inconsistent with the her own treatment records and with the medical record in the case as a whole. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41. Substantial evidence supported the ALJ's decision to disregard Dr. Stevenson's Assessment.

### B.    The Requirements of Listing 1.02A

The plaintiff contends that, in light of newly submitted evidence, the ALJ's determination that the plaintiff's degenerative joint disease of the knees does not meet or medically equal the severity of the impairment in Listing 1.02A is not based on substantial evidence. "[W]hen a claimant properly presents new evidence

to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1261 (11th Cir. 2007), 20 C.F.R. § 404.900(b).

It has been established that the Appeals Council considered the new evidence and determined that it was not sufficient to render the ALJ's decision erroneous. (Tr. at 1-3). However, this court still must consider whether the ALJ's determination that the plaintiff's degenerative joint disease of the knees does not meet or medically equal the severity of the impairment in Listing 1.02A is supported by substantial evidence, based on the entire record, which now includes the newly submitted evidence. Listing 1.02A provides as follows:

Major dysfunction of a joint(s) (due to any cause) . . . [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and other findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With . . . [i]nvolvment of one major peripheral

weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively.

20 CFR Part 404, Subpart P, Appendix 1, Part A, 1.02A. The plaintiff argues that the ALJ's determination was in error because Dr. Goldstein's medical records and newly submitted Examination under Oath, "when viewed as a whole[,] demonstrate that the plaintiff has continued to suffer from debilitating knee pain." (Doc. 13 at p. 9). Additionally, Mr. Griffin alleges that the weight given to the D.O.T. physical conducted by Dr. Vaughn was erroneous because his newly submitted Affidavit and Dr. Goldstein's Examination under Oath demonstrate that Mr. Griffin was not in fact asked to duck walk, nor was he capable of performing a duck walk. (Doc. 13 at pp. 10-11).

While the plaintiff alleges, and Dr. Goldstein opines in his Examination under Oath, that he suffers from debilitating knee pain and his knee "has gotten worse over the years" (Doc. 13 at p. 10), the plaintiff fails to point to objective evidence in the record that would meet or medically equal the severity of the impairment in Listing 1.02A. Irrespective of this failure, the evidence in the medical record actually preponderates against finding that Mr. Griffin meets or medically equals the severity of the impairment in Listing 1.02A and, as such, is not disabled, as determined by the ALJ. For example, the plaintiff submitted a new

record from Dr. Goldstein, dated April 20, 2015. (Tr. at 613-614). While Dr. Goldstein noted that the plaintiff reported "some worsening anterior left knee pain with knee instability" and that "he fe[lt] unstable when walking, especially if he does climb anything like a step ladder," Dr. Goldstein found that the plaintiff "has not tried a brace" nor has he tried "significant strengthening exercises." (Tr. at 613).

The physical examination on April 20, 2015, demonstrates that the requirements of Listing 1.02A have not been meet. Dr. Goldstein observed that the plaintiff was "in no acute distress" and had a "[n]ormal gait without assistive devices." (Tr. at 613-14). Regarding the left knee, Dr. Goldstein observed as follows:

> No Deformity. No discoloration. No Atrophy. Mild tenderness to palpation over later joint line. No crepitation. No effusion. Active Range of Motion: Extension 0 degrees, Flexion greater than 125 degrees. Passive Range of Motion: Consistent with active. Strength: 5/5 quadriceps. 5/5 Hamstrings. Negative posterior drawer. Stable to varus and valgus at 0 degrees of flexion with some active 30 degrees of flexion. Normal patella mobility. Negative patella apphresion.

(Tr. at 614). While Dr. Goldstein's impression found "[l]eft knee pain with functional instability status post TKA," Dr. Goldstein recommended that Mr. Griffin continue "to work on strengthening exercises on his left knee, which

[could] help with his functional instability, as well as possibly his anterior knee pain." *Id.* Dr. Goldstein also stated that

> [i]t is possible that his anterior knee pain will continue, as it may be secondary to some postsurgical changes, given multiple time of surgeries. We will get him fitted for a neutral functional MCL brace to provide him some extra stability, which will help him when he is active and more stability [sic]. I explained him [sic] that there is no apparent ligamentous defects given his stability at neutral.

*Id.* These findings establish that there is not a "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint[], . . . resulting in inability to ambulate effectively." 20 CFR Part 404, Subpart P, Appendix 1, Part A, 1.02A. While Mr. Griffin may have some functional instability, the ALJ correctly determined that Mr. Griffin's gait was normal, as demonstrated by the newly submitted medical record from Dr. Goldstein on April 20, 2015. More importantly, Dr. Goldstein noted that the plaintiff's left knee had "No Deformity." (Tr. at 614).

Further evidence in the medical record, as discussed previously, demonstrates that the plaintiff has a normal gait, which indicates that the plaintiff objectively "ambulate[s] effectively." 20 CFR Part 404, Subpart P, Appendix 1, Part A, 1.02A. In fact, there is more evidence of a normal gait in the medical

record than evidence of an abnormal gait, as argued by the plaintiff. (See Doc. 13 at p. 8). The medical record led the ALJ to conclude that the plaintiff's

> degenerative joint disease of the knee does not meet the requirements of listing 1.02A because he does not have a major dysfunction of a joint due to any cause, characterized by a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint, with (A) involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively.

(Tr. at 21). On January 2 and July 15, 2014, Dr. Vaughn found Mr. Griffin's gait to be normal. (Tr. at 525 and 497). On October 10, 2013, the plaintiff's physical therapist found his gait to be improving. (Tr. at 439). Dr. Goldstein found the plaintiff had a minimal limp on October 21, 2013. (Tr. at 462). By March 2014, Dr. Goldstein observed a mild limp on March 3, 2014 (tr. at 459), but a normal gait on March 31, 2014 (tr. at 457). Finally, on May 2, 2014, a few weeks after the plaintiff's April 2014 arthroscopic surgery, Dr. Goldstein noted the plaintiff had a normal gait. (Tr. at 455). Therefore, substantial evidence of a normal gait exists in the record.

While the court takes notice of the plaintiff's argument that he actually did not perform a duck walk during the D.O.T. physical on July 15, 2014, the ability to

perform a duck walk is of no consequence in determining whether the plaintiff can ambulate effectively. Therefore, to the extent the plaintiff argues that the affidavit of the plaintiff and Dr. Goldstein's Examination under Oath compel a finding that the plaintiff meets or medically equals the severity of the impairment in Listing 1.02A and is disabled is without merit.

Accordingly, even after the submission of new evidence to the Appeals Council, substantial evidence existed in the medical record to demonstrate that the plaintiff ambulates effectively, and the ALJ correctly determined that the plaintiff does not have an impairment that meets or medically equals the severity of the impairment in Listing 1.02A and is therefore not disabled.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Griffin's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The Commissioner's decision hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE. A separate Order will be entered.

DONE this 26th day of September, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE